**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOWARD MILLER, | : | CIVIL ACTION NO. 1:12-CV-2180 |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| COUNSELOR KELLNER, *et al.* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On November  1, 2012, Plaintiff Howard Miller, formerly an inmate at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), Frackville, Pennsylvania,  and currently an inmate at SCI-Frackville,  Frackville, Pennsylvania, filed, *pro se*, this instant civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff also filed a Motion to Proceed *in forma pauperis*.  (Doc. 2).  Plaintiff named as his two Defendants Counselor Kellner and Security Lt. Yackel, and he raised an Eighth Amendment failure to protect claim against them arising in July 2012 at SCI-Mahanoy.

Additionally, Plaintiff filed a Motion to Appoint Counsel (Doc. 4) and a proposed Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order (Doc. 5).  The Clerk of Court docketed Plaintiff's Doc. 5 proposed Order to Show Cause as a Motion for a Preliminary Injunction and a Temporary Restraining Order.

In his original Complaint, Plaintiff raised Eighth Amendment failure to protect claims against Defendants Kellner, Plaintiff's counselor at SCI-Mahanoy, and against SCI-Mahanoy

Security Lieutenant Yackel.

Specifically, Plaintiff alleged that on July 6, 2012, he told Defendant Kellner about his fears regarding his safety in general population at SCI-Mahanoy and told Kellner about his being assaulted several times from gang related relatives of the victim in his criminal case. Plaintiff requested Defendant Kellner to have him removed from general population and placed in protective custody. Plaintiff averred that Defendant Kellner dismissed him as being a liar and then e-mailed the SCI-Mahanoy security office essentially indicating that Plaintiff did not require protection.

Plaintiff alleged that on July 7, 2012, he asked to be interviewed by Defendant Yackel about his safety concerns and seemingly about his request to be placed in protective custody. Plaintiff stated that after Defendant Yackel read the e-mail from Defendant Kellner, Yackel was not interested in his safety and refused to order protection for Plaintiff based on the content of Kellner's e-mail. Plaintiff also alleged that Defendant Yackel failed to follow the security requirements of SCI-Mahanoy.

Plaintiff further alleged that he identified an inmate with several weapons as a possible threat to his safety to an unnamed Deputy at SCI-Mahanoy, and that the Deputy did not acknowledge the threat based on Kellner's e-mail. As a result, Plaintiff indicated that he had to isolate himself in his housing unit. (Doc. 1, p. 2).

As relief, Plaintiff requested compensatory and punitive damages against Defendants. (Doc 1, p. 3). Plaintiff did not indicate if he sued Defendants for damages in their official and/or individual capacities. Plaintiff also requested that the Court direct Defendants to remove

him from the "unsafe environment and return [him] to [his] initial status." We construed this request as seeking injunctive relief for the Court to order Defendants to remove Plaintiff from the general population and to place him in protective custody.

In his Doc. 5 filing, *i.e.*, the proposed injunction order, Plaintiff stated that prison officials have been issuing misconducts against him for refusing to go back into the general population and have refused to grant him protective custody. Plaintiff sought the Court to order Defendants to stop issuing him misconducts and to grant him protective custody.

On November 13, 2012, Plaintiff sent a letter to the Court in which he repeated his allegation that prison officials forced him back into the general population despite his showing the officials a foreseeable threat against him. (Doc. 8). Plaintiff also stated that as retaliation prison officials "continue to force [him] into a[n] unsafe environment [*i.e.* general population] knowing [he] will be assaulted." Plaintiff further indicated that prison officials were issuing him misconducts for refusing to go into the general population.

We screened Plaintiff's original Complaint as required by the PLRA, and found that it sufficiently stated failure to protect claims against both named Defendants. *See Glazewski v. Corzine*, 385 Fed.Appx. 83, 88 (3d Cir. 2010). We found that in his original Complaint Plaintiff alleged that both Defendants, Kellner and Yackel, were aware of a substantial risk of serious harm to him if he was not removed from the general population and placed in protective custody, that he was assaulted several times in the past and, that despite this knowledge decided not to place him in protective custody.

Thus, on November 15, 2012, we issued an Order and granted Plaintiff's *in forma*

*pauperis* Motion and, we directed service of Plaintiff's original Complaint on the two Defendants. (Doc. 9).

As stated, Plaintiff also filed a Motion for Appointment of Counsel. (Doc. 4). On November 16, 2012, we issued an Order and denied Plaintiff's Motion for Appointment of Counsel. (Doc. 11).

On November 23, 2012, Plaintiff filed a document entitled Amended Complaint. (Doc. 12). Plaintiff named two entirely new Defendants in his Amended Complaint, namely, Brenda Tritt, Deputy at SCI-Mahanoy and Christa Tobias, Unit Manager at SCI-Mahanoy. Plaintiff's original Complaint was not yet served on the two initial Defendants, Counselor Kellner and Security Lt. Yackel. Plaintiff also attached Exhibits to his Amended Complaint. It appeared that after Plaintiff filed his original Complaint, he discovered the names of his two new Defendants and then filed his Amended Complaint.

We then screened Plaintiff's Amended Complaint as required by the PLRA. We also considered Plaintiff's proposed Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order. (Doc. 5). We found that Plaintiff's Amended Complaint was not a complete pleading, it did not mention the two original Defendants and, it failed to state a constitutional claim against the two new Defendants.

Thus, on November 30, 2012, we issued a Memorandum and Order (Docs. 14 & 15) and directed, in part, as follows:

1. Plaintiff's Motion for a Preliminary Injunction and a Temporary Restraining Order

**(Doc. 5)** is deemed **Withdrawn.**[1]

    2.  The Court's November 15, 2012 Order granting Plaintiff's *in forma pauperis* Motion and directing service of Plaintiff's original Complaint on Defendants Kellner and Yackel **(Doc. 9)** is **Vacated.**

    3.  Plaintiff Miller shall file a Second Amended Complaint within **ten (10) days** of the date of this Order.

    4.  Plaintiff's Second Amended Complaint shall properly allege a claim under 42 U.S.C. § 1983, as discussed above, against all four of his Defendants.

(Doc. 15).

    On December 10, 2012, Plaintiff filed his Second Amended Complaint against all four of his Defendants, namely, Kellner, Yackel, Tobias and Tritt.[2]  (Doc. 18).  Plaintiff attached to his Second Amended Complaint a proposed Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order (Doc. 18-1).  Plaintiff did not file an Injunction Motion or a support brief.

    On December 11, 2012, Plaintiff sent a letter addressed to the Clerk of Court asking for immediate relief regarding his claim that unnamed prison officials at SCI-Mahanoy continually

---

[1]As stated, Plaintiff's Doc. 5 filing was not actually a Motion, rather it was a proposed order for injunctive relief.  Regardless, Plaintiff did not file a proper injunction motion or a support brief.  Also, Plaintiff was provided with a copy of the pertinent Local Rules of this Court. (Doc. 7).

[2]The Clerk of Court incorrectly docketed Plaintiff's Second Amended Complaint (Doc. 18) as his Amended Complaint.  As such, we directed the Clerk to correct the docket.

forced him back into general population despite advising them of his fears and concerns about being assaulted there. Plaintiff also seemed to state that the unnamed officials either issued misconduct reports against him or threaten to if he refused to return to general population. (Doc. 19).

We then screen Plaintiff's Second Amended Complaint as required under the Prison Litigation Reform Act of 1995 ("PLRA"). [3] *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008). In our December 14, 2012 Report and Recommendation ("R&R"), we recommended that the Court: (1) dismiss with prejudice Plaintiff's request for monetary damages against the four state actor Defendants in their official capacities; (2) dismiss with prejudice Plaintiff's claims against Defendant Tobias; (3) permit to proceed Plaintiff's Eighth Amendment failure to protect claims against Defendants Yackel, Kellner and Tritt; and (4) remand the case to the undersigned for further proceedings. (Doc. 20).

On January 15, 2013, the Court issued an Order and adopted our Doc. 20 Report and Recommendation its entirety. (Doc. 25).

On January 17, 2013, we issued an Order granting Plaintiff's Motion to Proceed *in forma pauperis* and directing the clerk to issue process to the United States Marshal Service for service of Plaintiff's Second Amended Complaint and the Court's January 15, 2013 Order on the three remaining Defendants. (Doc. 27). Summons was issued as to Defendants Kellner, Tritt and Yackel on January 17, 2013. (Doc. 28).

_____

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

On January 31, 2013, Plaintiff filed a Motion to Appoint Counsel (Doc. 29), which we denied in an Order dated February 4, 2013 (Doc. 30).

On February 11, 2013, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 31) along with a Declaration in Support of his Document 31 Motion (Doc. 32). On February 22, 2013, waiver of service forms were returned for Defendants. (Doc. 35). On March 4, 2013, Plaintiff filed his Brief in Support of his Document 31 Motion for a Temporary Restraining Order ("TOR") and a Preliminary Injunction ("PI"). (Doc. 36). On March 6, 2013, Defendants filed a Brief in Opposition to Defendant's Document 31 Injunction Motion. (Doc. 37).

On March 6, 2013, Defendants also filed a Motion for Discovery to Depose Plaintiff (Doc. 38), which we granted in an Order dated March 7, 2013 (Doc. 39). On March 13, 2013, Defendants filed their Answer with Affirmative Defenses to Plaintiff's Document 18 Second Amended Complaint. (Doc. 40). On March 14, 2013, Plaintiff filed a Declaration in Support of his Document 31 Motion for a TRO and PI. (Doc. 41). On March 15, 2013, Plaintiff filed another Motion to Appoint Counsel (Doc. 42), which we denied in an Order dated March 19, 2013 (Doc. 43). On March 21, 2013, Plaintiff filed a letter requesting the status of his Document 31 Motion for TRO and PI. (Doc. 45).

On April 19, 2013, we issued an R&R regarding Plaintiff's Document 31 Motion for a Temporary Restraining Order and a Preliminary Injunction. (Doc. 54). We recommended that the Court deny Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. 31). On May 14, 2013, the Court issued a Memorandum and Order and

denied Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction as moot since Plaintiff was transferred from SCI-Mahanoy to SCI-Frackville. (Doc. 57).

After completion of discovery, Defendants jointly filed a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56, on June 21, 2013.  **(Doc. 64).**  Defendants simultaneously filed their support brief and Statement of Material Facts ("SMF"), ¶'s 1-43, with attached Exhibits, A-D.  (Docs. 65, 66 & 66-1, pp. 1-97).   On July 3, 2013, Plaintiff filed a handwritten 2-page opposition brief to Defendants' Summary Judgment Motion and he attached his own, handwritten 1-page, 3-sentence Statement of Disputed Factual Issues.  (Docs. 67 & 67-1).   In his Statement of Disputed Factual Issues, Plaintiff merely listed three issues which he believes are genuine issues of material fact in this case.  Plaintiff also filed three of his own Declarations, with Exhibits attached to his Doc. 69 Declaration, in response to Defendants' dispositive motion.[4]   (Docs. 68, 69 & 71).   Plaintiff did not file a paragraph-by-paragraph response to Defendants' 43-paragraph SMF as he was required to do by Local Rule 56.1, M.D. Pa.  As we previously noted in this case, Plaintiff was provided with the pertinent Local Rules of this Court, including Rule 56.1.  (Doc. 7).

---

[4]Plaintiff states that his Doc. 69 Declaration with Exhibits is filed in support of his Summary Judgment Motion, however, the docket does not indicate that Plaintiff filed such Motion.   On May 29, 2013, Plaintiff filed a 2-page Declaration in support of an unfiled Motion for Summary Judgment Motion, a 3-page Statement of Undisputed Facts, *sans* citation to the record, and a 5-page support brief.  (Docs. 58-60).  Regardless, we will consider Plaintiff 's Docs. 58-60 filings with respect to our discussion of Defendants' Summary Judgment Motion.  As discussed below, even if Plaintiff did file a Summary Judgment Motion, he has failed to show that there are no genuine issues of material facts with respect to his claims and that he is entitled to judgment on them.

On July 18, 2013, Plaintiff filed his third Motion to Appoint Counsel (Doc. 72), which we denied in an Order dated July 23, 2013 (Doc. 73).

On September 12, 2013, Plaintiff filed a 3-sentence Motion for leave of Court to file a Third Amended Complaint, pursuant to Fed.R.Civ.P. 15(a), in order to add new party Defendants due to alleged retaliatory conduct after he commenced this action. **(Doc. 77).** Plaintiff also submitted a 5-page proposed Third Amended Complaint. (Doc. 77-1). Further, Plaintiff filed a support brief as well as a support Declaration. (Docs. 77 & 78).

We shall also address Plaintiff's Motion for leave of Court to file a Third Amended Complaint (Doc. 77) in this R&R.

## II.     STANDARDS FOR REVIEW.

*1.  Section 1983*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[5]  *See also Holocheck v. Luzerne*

---

[5]Plaintiff alleged in his Second Amended Complaint that the four individual Defendants are DOC employees at SCI-Mahanoy.  This was sufficient to show that these Defendants are state agents for purposes of §1983.

*County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case, and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

    *2. Motion for Summary Judgment*

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).[6]

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

---

[6]*See also Allen v. Fletcher*, Civil Action No. 3:07-0722, 2009 WL 1542767, at *2 (M.D. Pa. June 2, 2009) (outlining the summary judgment standard).

## III. STATEMENT OF MATERIAL FACTS.

As mentioned, the Court has allowed Plaintiff to proceed with his Eighth Amendment failure to protect claims against Defendants Yackel, Kellner and Tritt. (Doc. 25). Plaintiff basically alleges that Defendants failed to protect him from assaults by other inmates from July 6, 2012 through May 6, 2013, when he was transferred from SCI-Mahanoy to SCI-Frackville. (*See* Doc. 62). As their sole argument in support of their Summary Judgment Motion, Defendants assert that the undisputed evidence shows they were not deliberately indifferent to immediate serious threats to Plaintiff's safety during his incarceration at SCI-Mahanoy.

As stated, Defendants properly filed their SMF with citation to the evidence (Doc. 66, ¶'s 1-43), as required by Local Rule 56.1, M.D. Pa., in support of their position that they were not deliberately indifferent to Plaintiff's safety during the relevant times of this case. Also, Defendants submitted Exhibits, A-D, with their SMF as support for each one of their contentions. (Doc. 66-1, pp. 1-97). Defendants' Exhibit A consists of Plaintiff's complete deposition transcript. (Doc. 66-1, pp. 3-81). Plaintiff failed to file his paragraph-by-paragraph response to Defendants' SMF, and we afforded Plaintiff with ample opportunity to do so. Also, Plaintiff was provided with the relevant Local Rules of this Court.

Thus, Defendants have properly filed their SMF in support of their Summary Judgment Motion (Doc. 66), as required by Local Rule 56.1 of M.D. Pa., and their facts all properly cite to their evidence for support. Plaintiff failed to properly respond to Defendants' SMF as he was required to do. *See Carpenter v. Kloptoski*, 2012 WL 911558, *1 (M.D. Pa. March 16, 2012)("Because Plaintiff [a pro se inmate in a §1983 civil rights action] has failed to file a

separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement [] will be deemed admitted.").

Therefore, we find that Plaintiff has not properly responded to Defendants' SMF as required by Local Rule 56.1, M.D. Pa. *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers,* 2008 WL 3540526 (M.D. Pa.)*; Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed). Regardless of Plaintiff's failure to properly respond to Defendants' statement of facts, we accept Defendants' statement of facts to the extent they are supported by their evidence and to the extent Plaintiff has not submitted any evidence to dispute them.

As stated, Plaintiff filed several documents to dispute Defendants' SMF and evidence. Plaintiff filed a 2-page Declaration in support of his unfiled Motion for Summary Judgment and a 3-page Statement of Undisputed Facts, with no citation to the record. (Docs. 58 & 59). Plaintiff also filed a 2-page opposition brief to Defendants' Summary Judgment Motion and his own 1-page, 3-sentence Statement of Disputed Factual Issues listing three issues which he believes are genuine issues of material fact in this case with attached Exhibits, namely, a copy of a DOC Notice of Confinement dated May 2, 2013, indicating that Plaintiff was being placed in AC status under DOC DC-ADM 802 pending his transfer and copies of 5 pages of DOC DC-ADM 802. (Docs. 67 & 67-1). Plaintiff also filed three of his own Declarations, with Exhibits

attached to his Doc. 69 Declaration, in response to Defendants' dispositive motion. (Docs. 68, 69 & 71). Plaintiff further filed his Declaration in support of his constitutional claim, Doc. 63, averring that he had received back from his criminal defense attorney a photo and 5-page letter from the victim of his rape conviction, namely, Shanay Morrison. Plaintiff avers that the letter states his victim has a baby with an unnamed inmate in SCI-Mahanoy, and that prison officials were aware of this fact from the prison visiting room records kept for each inmate. In his deposition, Plaintiff also testified that he received the letter from Shanay Morrison in early 2012, before April, when he was confined at SCI-Mahanoy. (Doc. 66, ¶ 17).[7] Plaintiff did not submit a copy of the letter and the photo to the Court, nor did Plaintiff provide these documents to Defendants' counsel. We will consider Plaintiff's stated filings and Exhibits. However, we agree with Defendants that the letter from Shanay Morrison is not relevant for present purposes since "Defendants did not have a copy of the letter at the time of their investigation" and since "the letter did not identify any specific harm to Plaintiff." (*See* Doc. 66, p. 3 n. 1).

In his Doc. 68 Declaration, Plaintiff avers that on July 2, 2012, he expressed his fear of being assaulted in the general population at SCI-Mahanoy from the unnamed father of Shanay Morrison's baby who was also confined at SCI-Mahanoy. Plaintiff stated that he requested Defendant Kellner, his counselor, to place him in AC/PC (Administrative Custody/Protective Custody) until his promotional transfer was processed. Plaintiff avers that Defendant Kellner

---

[7]Since Defendants properly cite to their evidence to support each one of their SMF paragraphs, we do not fully repeat herein all of the cites to Defendants' evidence found at Doc. 66-1, Exs. A-D.

dismissed him as a "liar" and that Kellner e-mailed Defendant Yackel about his lack of credibility.  Plaintiff then avers that on July 7, 2012, he was interviewed by Security Captain Defendant Yackel regarding his safety concerns and that Yackel also dismissed his fears based on Kellner's e-mail.  Plaintiff then avers that since Defendants Kellner and Yackel failed to protect him by not putting him in AC/PC until he could be transferred to a different prison, he was forced to isolate himself in the inmate housing unit, until July 24, 2012, when he deliberately refused to lock up so that he would be placed in the RHU for his own protection. Plaintiff avers that he was in the RHU from July 24 through September 10, 2012, and that during this time he identified most of the inmates who assaulted him to Defendants and prison officials.  Plaintiff avers that even though he named the inmates who were his assailants and a threat to his safety, he was still issued disciplinary misconducts for disobeying a direct order and refusing to return to the general population.

Plaintiff also states in his Doc. 68 Declaration that he "spelled (sic) Administrative Custody through the DOC policy" and forced Defendants' supervisors to recognize his claim for protection and vacate the remainder of his disciplinary sentence and, give him an immediate transfer. Plaintiff cites to his Exhibits, namely, a copy of a DOC Notice of Confinement dated May 2, 2013, indicating that Plaintiff was temporarily being placed in AC status under DOC DC-ADM 802 VI A 1 K  pending his transfer and copies of 5 pages of DOC DC-ADM 802 VI and V.  (Docs. 67 & 67-1).  Plaintiff points out that a few days after the May 2, 2013 Notice of Confinement, he was transferred to SCI-Frackville on May 6, 2013.

Plaintiff concludes his Doc. 68 Declaration by stating that the Notice of Confinement

with his immediate placement in AC status shortly before his transfer proves he faced a serious threat against him at SCI-Mahanoy and creates a genuine issue of material fact regarding his failure to protect claim against Defendants.

According to Defendants' SMF, there is no dispute that Shanay Morrison was the victim regarding Plaintiff's rape conviction and 10-20 year sentence for which he was confined at SCI-Mahanoy. (Doc. 66, ¶ 1). Plaintiff's minium sentence is due to expire in 2026. (Doc. 66-1, p. 73).

In his deposition, Plaintiff stated that he thought he was going to receive a promotional transfer to a different prison and he met with Defendant Kellner on July 6, 2012, and told this Defendant that he felt threatened since he was assaulted three times, twice in June and once in July 2012, from relatives of the family of the victim in his rape conviction (Ms. Morrison).

Plaintiff did not know the names of the inmates who assaulted him but he knew their faces and later learned their nicknames, Ron Ron, Helm and A. In the first attack in early June 2012, Plaintiff stated that Ron Ron hit him with a lock in a sock, and did not say anything. Plaintiff stated that the second assault occurred later in June 2012, and Malik, Richard and Ron Ron jumped him and punched him, and they called Plaintiff a rapist and said he was not a Muslim. The third assault on Plaintiff occurred in July 2012, Thomas Ryas (or Ryas Thomas) a/k/a "B" two other inmates and Ron Ron (Lyron Ruffin) pulled out some hand made weapons, including a knife, and began to punch Plaintiff and, Plaintiff fought back and ran when they took out their weapons. Plaintiff stated that the four inmates did not say anything during the third assault, but that later on the cell block some other inmates told him that they heard he

raped "some people's family" at the prison. Plaintiff did not report the assault incidents to any prison staff at the time they occurred. Rather, Plaintiff stated that the first time he went to any prison staff member about the assaults was when he went to see Defendant Kellner on July 6, 2012. As stated, Plaintiff did not know the names of the inmates who assaulted him at the time he met with Kellner. Plaintiff stated that when he was in the RHU, on Disciplinary Custody ("DC") for refusing to lock up, during July 24 and August 23, 2012, he had first identified Ron Ron as one of his assailants, and that prior to July 23, 2012, he had not identified any of his assailants. Plaintiff reported the name of another one of the inmates during the week of September 10, 2012, when he told Defendant Tritt that Thomas Ryas was one of his assailants. (Doc. 66-1, pp. 41-51). Plaintiff also admitted that he never learned who was the father of Morrison's baby and that he did not ever figure it out. (*Id.*, pp. 52-53). Further, Plaintiff stated that after he was taken out of general population at SCI-Mahanoy and moved to B pod in the RHU on July 24, 2012, one of his assailants was moved to B pod, Julius Butler, but that Butler did not threaten him or assault him in the RHU. (*Id.*, pp. 56-57). The other assailants were in general population.

During the July 6, 2012 meeting with Defendant Kellner, and after the three assault incidents, Plaintiff asked Kellner to put him protective custody until his transfer paperwork was processed. It was Plaintiff 's belief based on Ms. Morrison's letter to him and her photo he received prior to April 2012, that the father of her baby was an inmate confined with him at SCI-Mahanoy. Plaintiff stated that some inmates in the prison told him they were related to the baby's father and they wanted him to come to the yard several times. Plaintiff stated that

he did not go to meet these inmates in the yard.  (Doc. 66-1, pp. 26-30).  Significantly, Plaintiff admitted that in the letter Morrison sent to him, she did not state who the father of her baby was and did not give a description of the father.  Additionally, Morrison stated that the father did not know who Plaintiff was.  Further, Plaintiff did not know the purpose of Morrison's letter to him and simply thought she "just wanted to write him to say something."  (*Id.*, pp. 35-36).  Thus, as Plaintiff admitted, Morrison's letter did not give the name of her baby's father who was at SCI-Mahanoy and Plaintiff did not know who the father was. Plaintiff stated that he then sent Morrison's letter to his criminal defense counsel to see if it could be used in his criminal case regarding a collateral appeal via a PCRA Petition.  (*Id.*, pp. 37-40).

Plaintiff believes that Defendant Kellner did not submit the paperwork for his transfer to the DOC Central Office.  Thus, Plaintiff requested to be removed from general population.  On July 7, 2012, Plaintiff was interviewed by Defendant Security Captain Yackel regarding his claim that he felt threatened by other inmates but Plaintiff could not give Yackel any information to support his claim and could not give the names of the inmates who he believed were a  threat to him.     As mentioned above, Plaintiff remained in general population until July 24, 2012, when he deliberately refused to lock up so that he would be placed in the RHU for his own protection.  Plaintiff was in DC in the RHU since he refused to obey an order.   At the time Plaintiff was placed in the RHU, he contacted the PA State Polcie in Frackville via a letter and Troopers interviewed him.  The Troopers told Plaintiff that his situation was a civil matter.  (*Id.*, pp. 63-64).  Also, Plaintiff stated that after his interview by Troopers, he was labeled a snitch and other inamtes in the RHU, on four occasions,  threw their waste at him, including their

urine and feces, and taunted him. (*Id.*, pp. 65-66).

On June 25, 2012, Plaintiff filed an Inmate Request to Staff that was received by the Deputy Superintendent on July 26, 2012, regarding a promotional transfer (*i.e.*, an incentive based transfer) to any other state prison due to his safety concerns at SCI-Mahanoy. (*Id.*, pp. 67-72 ). On July 11, 2012, Plaintiff filed Grievance No. 419800 basically claiming that Defendant Kellner failed to have the prison security office get him protective custody and, that Kellner mislead the security team in an e-mail and put him in danger. (Doc. 66-1, p. 87). The Grievance Officer denied Plaintiff 's Grievance on July 25, 2012, and the Officer stated that a meeting was held with Plaintiff on July 19 and 24, 2012, and Plaintiff admitted that he wanted to be transferred to a different prison. The Grievance Officer stated in the Response that Plaintiff's "request for a transfer is due to other issues that you are currently having with inmates at [SCI-MAhanoy]. You are trying to get an Incentive Based Transfer rather than deal with concerns at hand, which is with security office is telling you that you need to do." (Doc. 66-1, p. 85).

On July 26, 2012, Plaintiff appealed the denial of his Grievance No. 419800 to the Facility Manager. (Doc. 66-1, p. 88). The Facility Manager denied Plaintiff 's appeal.

Plaintiff filed a final appeal of his Grievance No. 419800 to the DOC Secretary's Office of Inmate Grievance & Appeals and his appeal of his Grievance was denied on September 21, 2012, by the Chief Grievance Officer. The Chief Grievance Officer stated that prison records showed that Kelllner provided the security office with the information Plaintiff gave to him during his July 6, 2012 meeting. The Chief Grievance Officer also stated that in the July 6, 2012

meeting, Plaintiff did not provide any specific information as to which inmates he was concerned with and where they were housed.  In his appeal, Plaintiff also stated that he believes Kellern was responsible for the security office's decision of not giving him protective custody and not taking his threats seriously.  However, the Chief Grievance Officer stated that since Plaintiff did not provide specific information regrading the threats, it was difficult for the security office to properly investigate his concerns. The Chief Grievance Officer found no evidence that Kellner mislead the security office as Plaintiff claimed. (Doc. 66-1, p. 86).

On July 12, 2012, Plaintiff filed Grievance No. 419793 and  it was denied on July 19, 2012, by the Intelligence Gathering Captain.  The Intelligence Gathering Captain (Datchko) stated that Plaintiff was interviewed on July 7, 2012, by Defendant Yackel about his safety concerns but could not provide Yackel with any information to substantiate his claims.  Plaintiff was advised that he had to provide the names of the inmates he felt threatened by in order to get a separation.  Plaintiff was again interviewed on July 19, 2012, by Unit Manger Tobias and he again could not provide the names of the inmates he felt threatened by.  The Intelligence Gathering Captain told Plaintiff that he had to provide the names of the inmates so that the prison could properly investigate his claims.  (Doc. 66-1, p. 90).

On July 19, 2012, Plaintiff then appealed the denial of his  Grievance No. 419793 to the Facility Manager and admitted he did not know who was threatening him. Plaintiff's appeal  was denied on July 27, 2012. (Doc. 66-1, pp. 91-93).

Finally, Plaintiff filed Grievance No. 428733 and it was denied by the Grievance Coordinator.  On September 20, 2012, Plaintiff appealed to the Facility Manager and stated that

on September 9, 2012, he told Defendant Tritt that Thomas Ryas was one of his assailants and said that Ryas possessed several hand made knives showing that it was not an isolated incident. The Facility Manger denied Plaintiff's appeal on October 15, 2012. (Doc. 66-1, pp. 95-97).[8]

## IV.     DISCUSSION.

*1. Plaintiff's Motion for leave of Court to file a Third Amended Complaint, Doc. 77*

Initially, we will address Plaintiff's Motion for leave of Court to file a Third Amended Complaint. (Doc. 77).

As mentioned, on September 12, 2013, Plaintiff filed a 3-sentence Motion for leave of Court to file a Third Amended Complaint, pursuant to Fed.R.Civ.P. 15(a), in order to add new party Defendants due to alleged retaliatory conduct after he commenced this action and after he was transferred to a new prison. (Doc. 77). Plaintiff also submitted a 5-page proposed Third Amended Complaint. (Doc. 77-1). Further, Plaintiff filed a support brief as well as a support Declaration. (Docs. 77 & 78). In his support Declaration, Plaintiff simply avers that he is in Administrative Custody ("AC") status in the Restricted Housing Unit ("RHU") at SCI-Frackville, and that he has limited paper and pens making it difficult to file copies of his documents with the Court. Specifically, in his proposed Third Amended Complaint, Plaintiff seeks to add as Defendants Wersinger, Clark, Sweeney and Smeal as Defendants in this case based on his allegations that they have retaliated against him after he was transferred to SCI-Frackville due to his filing of the instant action against the prison staff at SCI-Mahanoy. Plaintiff indicates in

---

[8]It appears that Plaintiff exhausted all of his available DOC administrative remedies with respect to his instant claims. We also note that Defendants do not raise the exhaustion issue in this case.

his proposed Third Amended Complaint that Wersinger, Clark and Sweeney are employed as prison officials at SCI-Frackville and that Smeal is a DOC Executive Deputy Secretary. (Doc. 77-1). Plaintiff alleges that he was transferred from SCI-Frackville to SCI-Mahanoy on May 6, 2013, and then released back into the general population on May 14, 2013, when he was retaliated against due to his filing of his instant case. The acts of retaliation alleged by Wersinger, Clark and Sweeney are stated to have occurred during July 2013 at SCI-Frackville. Smeal is named as a Defendant in Plaintiff's proposed Third Amended Complaint solely based on *respondeat superior*, and Smeal is not alleged to have been personally involved in any acts of retaliation against Plaintiff at SCI-Frackville. (Doc. 77-1, p. 5, ¶ 36). Plaintiff does not allege any retaliation after his transfer from SCI-Mahanoy by Defendants Kellner, Yackel and Tritt in his proposed Third Amended Complaint.

Under Rule 15(a), it is within the Court's discretion to grant or deny a request for leave to file an amended pleading. Wright Miller & Kane, *Federal Practice & Procedure,* § 1504; *Farmer v. Brennan*, 511 U.S. 825, 845, 114 S.Ct. 1970, 1983 (1994). Furthermore, as Plaintiff also recognizes (Doc. 77), leave should be freely granted when doing so will promote the economic and speedy disposition of the whole case, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the case. *Id.*

The grant or denial of a motion for leave to amend or supplement is committed to the sound discretion of the District Court. *Cureton v. NCAA*, 252 F. 3d 267, 272 (3d Cir. 2001). The Court is well aware Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires," however, if the amendment would be futile, it should not be permitted.

*See Forman v. Davis*, 371 U.S. 178, 182 (1982). The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Further, "prejudice to the non-moving party is the touchstone" for denying leave to file an amended complaint. *Cornell & Co., Inc. v. OSHA Review Comm'n.*, 573 F. 2d 820, 823 (3d Cir. 1978).

We will recommend that Plaintiff's Doc. 77 Motion for leave of Court to file a Third Amended Complaint be denied since Plaintiff's proposed new claims of retaliation against Wersinger, Clark and Sweeney arising at SCI-Frackville must be fully exhausted under the DOC administrative remedy process and they should then be asserted in a new action filed separately by Plaintiff.[9] Also, as stated, since Smeal is named as a Defendant in Plaintiff's proposed Third Amended Complaint solely based on *respondeat superior*, Plaintiff fails to state a proper constitutional claim against Smeal. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)(liability cannot be predicated solely on the basis of *respondeat superior*, since a defendant must have personal involvement in a civil rights action).

Additionally, based on this late stage of Plaintiff 's current case filed on November 1, 2012, and since the remaining Defendants Yackel, Kellner and Tritt are not alleged to be personally involved with Plaintiff's proposed new retaliation claims against SCI-Frackville staff,

---

[9]Plaintiff's Motion for leave of Court to file a Third Amended Complaint was filed less than 2 months after all of the alleged retaliatory conduct at SCI-Frackville. As such, it does not seem possible that Plaintiff could have fully exhausted all of his DOC administrative remedies with respect to his new retaliation claims, as required, against his proposed new Defendants prior to filing his Doc. 77 Motion. *See Mitchell v. Dodrill*, 696 F.Supp.2d 454 (M.D. Pa. 2010); *Spruill v. Gillis*, 372 F.3d 218 (3d. Cir. 2004).

we find undue prejudice to Defendants Yackel, Kellner and Tritt if Plaintiff's Motion for leave of Court to file a Third Amended Complaint was granted.

Finally, as discussed below, since we will recommend that the Summary Judgment Motion of Defendants Yackel, Kellner and Tritt be granted, we find futility in the Court allowing Plaintiff to file his proposed Third Amended Complaint against entirely new Defendants regarding new claims at a new prison.

   2. *Summary Judgment Motion of Defendants Yackel, Kellner and Tritt, Doc. 64*

Plaintiff is proceeding with his Eighth Amendment failure to protect claims against Defendants Yackel, Kellner and Tritt. Plaintiff alleges that Defendants failed to protect him from assaults by other inmates at SCI-Mahanoy from July 6, 2012 through May 6, 2013, when he was transferred to SCI-Frackville. Plaintiff alleges that Defendants failed to have him placed in protective custody until he could be transferred to a different prison. Plaintiff claims that he had to disobey direct orders and have misconduct reports issued against him by refusing to lock up so that he would be placed in the RHU at SCI-Mahanoy until he could obtain a transfer.

Thus, Plaintiff raises an Eighth Amendment failure to protect claim as against all three of his remaining Defendants. *See Glazewski v. Corzine*, 385 Fed.Appx. 83, 88 (3d Cir. 2010).

In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

> "The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines

whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989).

Thus, under the Eighth Amendment, prison officials have a duty "to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (internal citations omitted). In *Glazewski v. Corzine*, 385 F. App'x 83, 88 (3d Cir. 2010), the Court stated:

> To establish a failure to protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison official acted with "deliberate indifference" to his health and safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir. 2001).

In *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001), the Third Circuit stated that:

> [S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. *See* [*Farmer*, 511 U.S.] at 842, 114 S.Ct. 1970. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring. *See id.* at 844.

We find that the undisputed evidence as discussed above shows Plaintiff has failed to establish his failure to protect claim against Defendants Kellner, Yackel and Tritt. The evidence shows that these prison officials did not have knowledge of any specific threats against Plaintiff by any specific inmate. Plaintiff admitted that he did not know the names of the inmates who assaulted him when he met with Defendants and he did not know who the father of the

Morrison baby was. The letter Ms. Morrison sent to Plaintiff did not even identify the father of her baby and it did not state that Plaintiff was in danger from the father. We find that the evidence simply fails to demonstrate both "substantial risk of serious harm" and "deliberate indifference" to Plaintiff's health and safety by Defendants Kellner, Yackel and Tritt. *See Glazewski*, 385 F. App'x at 88.

The Court in *Knauss v. Shannon*, 2010 WL 569829, *14, stated:

> In the instant case, Knauss has not met either the objective or subjective element of a failure-to-protect claim against Defendant Wagner.
> ...............................................................................................
>
> Further, Knauss has not sufficiently alleged that Defendant Wagner was deliberately indifferent to Knauss' health or safety, as there is no allegation that Defendant Wagner had any knowledge that Defendant Hannon would strike Knauss. Thus, because Defendant Wagner could not have been deliberately indifferent to a risk of which he was unaware, Knauss has failed to state a claim of
> failure-to-protect against Defendant Wagner. *See, e.g., Matthews*, 2009 WL 311177, at *5.

As discussed above, similar to the *Knauss* case, Defendants Kellner, Yackel and Tritt are correct in that the undisputed evidence shows that both the objective and subjective elements of Plaintiff's failure to protect claim has not been established against them. Further, the undisputed evidence show that Defendants Kellner, Yackel and Tritt did not fail to protect Plaintiff from the assaults by other inmates in June and July 2012, since Plaintiff could not give these Defendants specific information about his assailants or about the father of Ms. Morrison's baby who was allegedly also confined at SCI-Mahanoy. Additionally, Plaintiff admitted that during the assaults on him by the other inmates, they did not mentioned Ms. Morrison or the father of her baby as the reasons for the assaults. In fact, Plaintiff never found out who was the

father of Ms. Morrison's baby. Plaintiff testified that the assailant inmates said that he was a rapist and not a Muslim during the assaults. Moreover, before Plaintiff was placed in AC in the RHU on July 23, 2012, he never reported the assault incidents or identified his assailants. During the time Plaintiff was in the RHU at SCI-Mahanoy, some inmates threw feces and urine at him and taunted him but they did not indicate why they did this. Plaintiff admitted that such conduct occurs in the RHU for no particular reason. Significantly, Plaintiff admitted that inmate Julius Butler was in the RHU with him and that Butler acted normal towards him even though Butler was one of his earlier assailants. As Defendants correctly state, "[they] were not deliberately indifferent to Plaintiff 's safety given that no known serious imminent specific threat to Plaintiff 's safety was ever identified." (Doc. 65, p. 12). There is simply no evidence that Defendants ignored any specific threat to Plaintiff due to the allegation that the father of Ms. Morrison's baby was confined at SCI-Mahanoy with Plaintiff and, there is no evidence Defendants were ever given specific information that Plaintiff was targeted for raping Ms. Morrison. The record, as discussed above, shows that prison officials at SCI-Mahanoy thoroughly investigated Plaintiff's safety concerns on several occasions and advised Plaintiff that his request for protective custody lacked sufficient facts to support it since he did not identify any specific threats against him.

Thus, we agree with Defendants Kellner, Yackel and Tritt that they are entitled to summary judgment with respect to Plaintiff's constitutional claims against them since they were not provided with specific threats against Plaintiff by specific inmates and, sufficient reasons why Plaintiff wanted to placed in protective custody until he was transferred from SCI-Mahanoy.

Accordingly, we will recommend that Defendants' Motion for Summary Judgment (Doc. 64) be granted as to Plaintiff's remaining constitutional claims against them.

## V.   RECOMMENDATION.

Based on the aforementioned discussion, we respectfully recommend that the Court:

1.   **DENY** Plaintiff's **Doc. 77** Motion for leave of Court to file a Third Amended Complaint;

2.   **GRANT** the Motion for Summary Judgment **(Doc. 64)** of Defendants  Kellner, Yackel and Tritt as to Plaintiff's remaining Eighth Amendment failure to protect claims against them;

3.   **ENTER JUDGMENT IN FAVOR** of Defendants Yackel, Kellner and Tritt, and against Plaintiff Miller; and

4.   **CLOSE THIS CASE.**


**s/ Thomas M. Blewitt**_____
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 26, 2013**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOWARD MILLER, | : | CIVIL ACTION NO. 1:12-CV-2180 |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| COUNSELOR KELLNER, *et al.* | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 26, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the magistrate judge,
> making his or her own determination on the basis of that record.  The judge may also
> receive further evidence, recall witnesses or recommit the matter to the magistrate judge
> with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may constitute a waiver of any appellate rights.




<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**




**Dated:   September 26, 2013**